

**SIGNED this 26th day of September, 2016**

_/s/ Shelley D. Rucker_
Shelley D. Rucker
UNITED STATES BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION**

_____

| | |
|---|---|
| In re:<br>STEPHEN RAY OBERG and<br>BRANDY NICOLE OBERG,<br><br>      Debtors; | No. 1:14-bk-14496-SDR<br>Chapter 13 |
| GEORGIA DEPARTMENT OF<br>HUMAN SERVICES<br>      Plaintiff, | |
| v. | Adversary Proceeding<br>No. 1:15-ap-01003-SDR |
| Brandy Nicole Oberg,<br>      Defendant. | |

## MEMORANDUM

Plaintiff Georgia Department of Human Services ("Plaintiff" or "DHS") obtained a decision from an administrative law judge for the Office of State Administrative Hearings in Georgia ("OSAH"). That decision, which the court will refer to as the "Final Decision," held Brandy Nicole Oberg (Debtor or Defendant) liable for the over-issuance of food stamps because she "intentionally violat[ed] the Food Stamp Program Regulations. 7 C.F.R. § 273.16(c)." (Doc. No. 1-1, Exhibit A, Final Decision).[1] At the administrative hearing, DHS claimed that the

---

[1] All docket entry references refer to docket entries pertaining to Adversary Proceeding No. 1:15-ap-01003-SDR,

1

Debtor received food stamp benefits for which she did not qualify based on inaccurate information she supplied. The inaccurate information related to her household income and the composition of her household.

DHS has filed this adversary proceeding against the Debtor seeking a judgment from this court that the unpaid liability assessed in the Final Decision is a non-dischargeable debt pursuant to 11 U.S.C. §§ 523(a)(2)(A) or (B). Relying on the findings in the Final Decision and its statement of undisputed material facts, DHS has moved for summary judgment under subsection (B)[2] – nondischargeability based on a false financial statement. Based on the following analysis, the court concludes that the Final Decision does not have preclusive effect. There are also genuine disputes regarding some but not all material facts. Therefore, the motion for summary judgment will be granted in part and denied in part.

## I.      Jurisdiction

28 U.S.C. §§ 157 and 1334, as well as the general order of reference entered in this district, provide this court with jurisdiction to hear and decide this adversary proceeding. The Plaintiff's action regarding the dischargeability of particular debts is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I).

## II.     Statement of Material Facts

Except where noted, the following facts are undisputed. DHS provided a Statement of Material Facts as to Which There Exists No Issue ("SMF") in compliance with Fed. R. Civ. P. 56, as made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7056; E.D. Tenn. LBR

---

unless otherwise noted.

[2] Defendant responded to this motion and addressed subsection (A) of 11 U.S.C. § 523(a)(2). Plaintiff filed a supplemental brief in which it contended that the Final Decision also has preclusive effect as to subsection (A). Because of the court's holding that the representation regarding income is a statement regarding financial condition, subsection (A) is no longer applicable because subsections (A) and (B) are mutually exclusive grounds for exception from discharge. The court is making no ruling at this time regarding whether the false statement regarding household composition as an independent basis for an objection based on misrepresentation or actual fraud under subsection (B).

7056-1(a). The Defendant did not file a response to the SMF which complied with E.D. Tenn. LBR 7056-1(b)[3]; however, she did note several disputes regarding material facts in her brief. She does refer to portions in her deposition attached to DHS's motion in support of her contentions to show what facts are disputed. The court will therefore consider her brief in opposition as meeting the requirements of the local rule in spirit, if not, exact form. With respect to those facts in dispute, the court will address whether those disputes represent a "genuine dispute as to any material fact." Fed. R. Bankr. P. 7056, Fed. R. Civ. P. 56(a).

From July 2010 through December 2011 ("Benefit Period"), Defendant received food stamp benefits from DHS. (Doc. no. 65, SMF.) Defendant received $11,714 during this period. (*Id.*)

In order to keep receiving benefits, Defendant was required to fill out DFCS TANF/Food Stamp Review Forms ("Review Forms") on June 9, 2010, November 29, 2010, and June 20, 2011. (Doc. no. 65-2, Affidavit of Pamela Johnson ("Johnson Affidavit") ¶ 6.) Each of these Review Forms contained the question: "Does anyone in your household work?" (Johnson Affidavit, Ex. B.) Immediately following that question, the Review Forms directed the applicant "[i]f yes, list information about your pay from employment such as wages, bonuses, and tips, and attach proof of ALL income received in the last four (4) weeks." *Id.* at 26.[4] "Food stamp review forms require food stamp recipients to provide accurate and detailed information concerning their household composition and income. DHA relies on this information to determine the amount of food stamp benefits an applicant is eligible to continue to receive." (Johnson Affidavit ¶ 7.)

---

[3] "Absent a response in accordance with the requirements of this subdivision, the material facts set forth in the movant's statement will be deemed admitted." *Id.*

[4] The review forms submitted to DHS on June 9, 2010, and November 29, 2010, worded the follow up question differently. They stated, "If yes, list information about your pay from employment such as wages, bonuses, and tips, and (attach check stubs for ALL income received in the last four (4) weeks) [sic]." (Johnson Affidavit, Ex. B.)

3

On the June 9, 2010 Review Form, Defendant failed to answer this question, but on both the November 29, 2010 and the June 20, 2011 Review Forms, she checked the box for "no." (Johnson Affidavit, Ex. B.) However, Defendant was employed during the entire Benefit Period, first with Metropolitan Security, Inc. from May 2010 through August 2011, then with Aerotek from August 2011 through March 2012. (Johnson Affidavit ¶ 12.) Defendant maintains that she attached copies of her pay stubs to the Review Forms when she submitted them. (Doc. no. 65-3, Deposition of Brandy Nicole Oberg ("Oberg Dep.") pg. 32 ln. 22 – pg. 24 ln. 5.) Ms. Johnson on behalf of DHS states that "No check stubs were attached to any of the DFCS TANF/ Food Stamp Review Forms that Defendant submitted to DHS. Further, DHS never received any check stubs from Defendant." (Doc. No. 73-1, Second Affidavit of Pam Johnson, ¶ 5.)

On February 9, 2012, DHS received a request for investigation from Catoosa County. (Johnson Affidavit, Ex. A.) A caller had reported to Catoosa County that Defendant's husband was living in the home and that Defendant had not reported this to DHS. (*Id.*) An investigation led DHS to conclude that Defendant's husband was living in the home during the Benefit Period. (*Id.* at ¶ 9.) Defendant maintains that her husband did not live in the home until 2012. (Oberg Dep. pg. 23 ln. 17 – pg. 26, ln. 8.) She also contends that DHS has not produced admissible evidence regarding Mr. Oberg's residence during the relevant period. She contends that the statements about his living arrangements were, and are, hearsay.

The investigation also led to the conclusion that Defendant's income from her employment during the Benefit Period was sufficient to disqualify her from receiving food stamps even if her husband did not live in the home. (Johnson Affidavit ¶ 13.) In her response to Interrogatory 13, Defendant contends that she did disclose her employment with Metropolitan Security in connection with a recertification. (Doc. 48-3, Answer to Plaintiff's Interrogatories, ¶

4

13.) She did not disclose her employment with Aerotek because she was hired for that position near the end of a certification period. She decided at that time she was no longer in need of Food Stamps and would not seek to be recertified, and, in fact, did not seek to be recertified. She contends that neither position changed her income level significantly. (*Id*.) The pay information attached as Exhibit F to the Johnson Affidavit shows income from these two positions totaling $38,697.81 for the relevant benefit periods.

In February and March of 2013, Defendant was provided multiple opportunities to meet with DHS to review its findings, particularly the overpayment calculations. (Johnson Affidavit ¶¶ 14-17.) Defendant failed to attend any of these meetings and did not contact DHS. (*Id.*) On March 20, 2013, DHS requested an Administrative Disqualification Hearing with the Office of Administrative Hearings of the State of Georgia ("OSAH"). (*Id.* at ¶ 18.) Defendant was notified of this in a letter dated March 20, 2013. (*Id.* at ¶ 19.)

OSAH issued a Notice of Hearing and served Defendant on March 27, 2013. (*Id.* at ¶ 20.) The Administrative Disqualification Hearing was set for May 8, 2013. (*Id.*) Defendant did not attend this hearing. (*Id.* at ¶ 21.) Despite Defendant's absence, DHS presented its case at the hearing, providing OSAH with testimony and documentary evidence. (SMF ¶ 23.)

On June 3, 2013, OSAH issued its Final Decision. (Doc. no. 1-1, Ex. A.) The Final Decision found that Defendant "failed to report correct household income in a timely manner as required," and "failed to report correct household composition in a timely manner as required." (*Id.*) It also concluded that Defendant received an "overissuance of Food Stamp Benefits for intentionally violating the Food Stamp Program Regulations," citing 7 C.F.R. § 273.16(c). (*Id.*) Defendant was held responsible for $11,714.00 worth of overpayments. (*Id.*)

### III. Standard of Review

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Kava v. Peters*, No. 09-2327, 2011 WL 6091350, at *3 (6th Cir. Dec. 7, 2011).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986); *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g) made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7056.

### IV.    Analysis

DHS has argued that it is entitled to summary judgment on two alternative theories: 1) that the Final Decision of OSAH precludes Defendant from re-litigating those issues, and that the

Final Decision is enough to satisfy 11 U.S.C. § 523(a)(2)(B), and 2) that there is no issue of material fact as to whether Defendant's actions were enough to satisfy 11 U.S.C. § 523(a)(2)(B)'s requirements for nondischargeability.

### A.  Applicable State Law Determines the Preclusive Effect of OSAH's Final Decision

DHS contends that it is entitled to summary judgment because the facts of this matter have already been determined in the Final Decision of OSAH. If those facts have been determined, then the doctrine of collateral estoppel prevents this court from making additional findings.  For this argument to prevail, DHS must show both that the Final Decision of OSAH has preclusive effect, and that the findings in the Final Decision satisfy 11 U.S.C. § 523(a)(2)(B).

The Sixth Circuit has held that a party may be estopped from re-litigating factual findings made by a state court in an action to determine dischargeability if the requirements of collateral estoppel are met. *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir. 1981).   Federal courts must give a judgment from a state court the same preclusive effect as it would receive under the law of the state that rendered the judgment. *See Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81 (1984); *see also Marrese v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 380 (1985).  Accordingly, this court must look to Georgia law to determine if the Final Decision has preclusive effect.

### B.  Georgia Law Does Not Preclude the Defendant from Re-Litigating in this Case

In general, Georgia law requires the following elements for collateral estoppel: 1) identity of parties between the two cases; 2) identity of issues between the two cases; 3) actual and final litigation of the issue occurred in the first proceeding; 4) the determination of the issue was essential to the first proceeding; and 5) the party who is being precluded had a full and fair opportunity to litigate the issue in the first proceeding. *Lusk v. Williams (In re Williams)*, 282

7

B.R. 267, 272 (Bankr. N.D. Ga. 2002). While this is the test for applying collateral estoppel to court decisions, the Georgia Supreme Court has used an almost identical test to apply collateral estoppel to administrative decisions. *Malloy v. State*, 744 S.E.2d 778, 782-3 (Ga. 2013).[5] It appears that Georgia regularly gives administrative decisions preclusive effect in civil matters. *Id.* at 783.

Upon an initial reading of the record from the lower court and the language of the Final Decision, it would seem that the Final Decision would have preclusive effect in this adversary proceeding. The parties are the same in both proceedings. The issues are similar – whether the debtor made false statements and whether those statements allowed her to receive property she was not entitled to receive are issues for both cases. However, the court finds that two of the elements of DHS's objections were not addressed in the Final Decision. Whether DHS reasonably or justifiably relied on the false statements and whether the Defendant intended to deceive DHS with her omissions and statements in the Review Forms were not addressed.

Further, Georgia law requires that all of the elements of issue preclusion be met. *See Lusk* at 272, *Malloy* at 782-3. If any issue fails to meet every element for preclusion, then that issue cannot be given preclusive effect. *See id.* As explained below, DHS cannot show that the determination of the issue of whether the Defendant made false statements regarding her income in the first proceeding was essential to the judgment, so the court is unable to apply collateral estoppel to prevent the Defendant from re-litigating the issues involved.

The fourth element of issue preclusion requires the prior adjudication of the issue to have been essential to the first proceeding. Under Georgia law, if there are multiple issues that were

---

[5] The only difference in the two tests is that the court in *Malloy* did not list the second element of the test from *Lusk*. That element requires identity of issue between the previous proceeding and the current proceeding. Because it appears that the Georgia Supreme Court treated the second element as subsumed by the third element, the court does not find that the two tests are substantively different.

8

raised in the prior adjudication, and any one of them is sufficient on its own to lead to the judgment, neither of those issues are given preclusive effect. *Callaway v. Irvin*, 51 S.E. 477, 480 (Ga. 1905). *See also In re St. Laurent*, 991 F.2d 672, 676 (11th Cir. 1993).

The Final Decision found that Defendant intentionally provided incorrect information in two areas, and consequently received an over-issuance of food stamps. (*See* Doc. no. 1-1, Ex. A.) The Final Decision does not state which of the two failures to provide correct information created the debt which DHS seeks to have declared nondischargeable. (*Id.*) This ambiguity requires the court to consider whether each false statement could be an independent basis for the judgment for restitution. If so, then under the general rule neither basis should be given preclusive effect. Under the general rule, because the court cannot tell whether the restitution award was made because of the false statement about income or the false statement about household composition, the court cannot give either basis preclusive effect.

The court has found an exception to the general rule that two bases for a judgment provides no preclusive effect. If the issue is dischargeability and both bases for the judgment are also grounds for exception from discharge, then the judgment may have preclusive effect. *In re Lemmons*, 2005 WL 6487216, *5 (Bank. N.D. Ga. 2005). To apply this exception, the court must consider whether false statements about income and household composition are both bases for finding a debt nondischargeable under § 523(a)(2)(B). To have preclusive effect in this case, both false statements would have to be written statements respecting the debtor's financial condition to satisfy the elements of § 523(a)(2)(B). Based on the applicable case law, a false statement about household composition is not one about the debtor's financial condition.

"Financial condition" "has been interpreted narrowly by the Bankruptcy Appellate Panel of the Sixth Circuit to mean 'statements that are made regarding a debtor's overall net worth,

9

assets and liabilities.' " *Lucas County Dep't of Job and Family Serv. v. Perrin (In re Perrin)*, 2013 Bankr. LEXIS 562, 8 (2013) (quoting *Prim Capital Corp. v. May (In re May)*, 368 B.R. 85 (Table), (B.A.P 6th Cir. 2007)). Only documents that detail the debtor's ability to pay are statements respecting financial condition. *Id.* at 8-9. A statement concerning household composition is not a statement concerning the debtor's financial condition under § 523(a)(2)(B)(ii). *See id.* at 9. Unlike income, which the court finds is directly related to a debtor's ability to pay, or in this case the Debtor's eligibility for the Food Stamp Program, an understatement of the number of people in the household might or might not be a significant factor in the amount of benefits received. Therefore, the false statement regarding household composition does not satisfy the financial condition element of § 523(a)(2)(B).

Because both bases for the judgment cannot serve as grounds for objection to the dischargeability of the debt, the exception does not apply. If the exception does not apply, as stated above, the general rule prevents the Final Decision from having preclusive effect.

C.  Existence of Genuine Issues As to Material Facts

Without preclusion, the court is left to determine whether there are genuine disputes as to material facts in this case. Section 523(a)(2)(B) requires that the debtor receive "money, property, [or] services . . . by . . . use of a statement in writing: (i) that is materially false; (ii) respecting the debtor's . . . financial condition; (iii) on which the creditor . . . reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive."

The Defendant does not contest that she received money from the Plaintiff and that she was not entitled to those benefits. Defendant also admits that she was working during the period covered by the Review Forms. On two of those Review Forms, she selected the box for "no" when asked if she was employed. As to the June 9, 2010 Review Form, the Defendant did not

10

answer the question and the court is not prepared to equate failing to answer a question with making a false statement without more information. She has not challenged the authenticity of the Review Forms. Defendant does not contest the contents of the Review Forms, nor deny that she filled them out and provided them to DHS. Her dispute involves only whether she provided additional material that should have made reliance unreasonable. Therefore, pursuant to Fed. R. Bankr. P. 7056 which makes Fed. R. Civ. P. 56(g) applicable to bankruptcy proceedings, the court may grant summary judgment to DHS as to the facts that the Defendant obtained property through the use of written statements provided on November 29, 2010 and June 20, 2011 which contained false statements.

The court also concludes that there is no genuine issue of material fact as to whether the false statements regarding Defendant's income and household composition were material. The discharge objection requires that the statements be not only false, but materially so. The materiality of a false statement is a legal matter for the court to decide. *U.S. v. Keefer*, 799 F.2d 1115, 1126 (6th Cir. 1986). "The test for materiality is whether 'the false statement had a natural tendency to influence, or was capable of influencing, the decision of the agency.' " *Id.* (quoting *U.S. v. Chandler*, 752 F 2d 1148, 1151(6th Cir. 1985)). The Food Stamp Program in question determines eligibility to participate in the Program by income. 7 C.F.R. 273.9(a). Eligibility requires that the participant have a gross income of no more than 130% of the Federal income poverty standard for a similarly-sized household for the contiguous 48 States.[6] *Id.* at (a)(1). In

---

[6] Since Defendant maintains that Mr. Oberg was not living with her during the benefit period, the court will use the federal figures for a four person household to note that her income consistently exceed the limit.
   For the Review Form dated November 29, 2010, the federal poverty guideline for a family of four was $22,050/year.  This means Defendant was entitled to a monthly income of $2,389 ((22,050 x 1.3) / 12). Defendant's monthly income extended that threshold each month for the second half of 2010 except for October, in which she was $3 short of the threshold.
   For the Review Form dated  June 20, 2011, Defendant, the federal poverty guideline for a family of four was $22,350/year.  This means Defendant was entitled to a monthly income of $2,421 ((22,350 x 1.3) / 12). Defendant's monthly income extended that threshold each of the five months that preceded the Review Form.

11

this case a false statement regarding income or household composition would be material to the receipt of the food stamps because the amount of household income and the size of the household are the key factors in determining whether the Defendant is eligible for benefits. Pursuant to Fed. R. Civ. P. 56(g), summary judgment is also granted as to the materiality of the false statements on the Review Forms.

As to the "financial condition" element of § 523(a)(2)(B), the court concludes that the false statement regarding household income satisfies the element of the false statement "respecting financial condition." As noted above, the false statement regarding household composition does not because "respecting the debtor's . . . financial condition" is interpreted by the Sixth Circuit B.A.P. to only include statements detailing the debtor's ability to repay the debt. The Defendant argues that the statement regarding Defendant's income is not enough to satisfy the Sixth Circuit B.A.P.'s narrow interpretation of § 523(a)(2)(B)(ii). The court does not find this argument persuasive and the argument is not supported by the case law. *See Prim Capital Corp. v. May (In re May)*, 368 B.R. 85 (Table), (B.A.P 6th Cir. 2007). Income is an essential component of an individual's financial condition; and cash flow is a critical part of a creditor's evaluation of whether a debtor can pay. The only difference in this case from a typical lender-borrower transaction is that these circumstances motivate an applicant to understate her income to obtain the benefits rather than to exaggerate her income to obtain loan proceeds. The court does not find that such a difference is determinative. In both, the inaccurate statements about income create the false impression that the debtor qualifies to obtain the requested property from the creditor.

---

During both of those periods, over two-thirds of Defendant's income was attributable to employment that she failed to disclose to DHS.

The contents of the application and the Renewal Forms also support a conclusion that they were written statements regarding the Defendant's financial condition. They contained other questions which DHS used to ascertain the Defendant's overall financial condition. For example, the forms provide a list of potential assets and ask if anyone in the household has any such assets. (Doc. no. 65-4, Ex. B 2.) They contain numerous other questions in an attempt to learn about any potential sources of income and expenses. (*Id.* at 5.) Looking at the Review Forms in their totality, leads to the conclusion that there is no genuine issue as to whether the income statements in the Review Forms were statements regarding the Defendant's financial condition.

For these reasons, the court also grants summary judgment under Fed. R. Civ. P. 56(g) as to the fact that the Review Forms are written statements concerning the debtor's financial condition.

The Defendant does dispute whether she made the misrepresentations about her work status with the intent to deceive and whether she made any misrepresentation concerning Mr. Oberg's presence in the household. She also disputes that DHS reasonably relied on her statement that she was not working when she supplied pay stubs with the inaccurate review forms. The court finds that there are genuine disputes as to these facts. Summary judgment will be denied as to the issues of reasonable reliance and intent to deceive and as to the facts related to the June 9, 2010 Review Form and whether she supplied her pay stubs.

**V.    Conclusion**

To prove that its debt is nondischargeable under § 523(a)(2)(B), DHS must show that the prior decision determined that Defendant received "money, property, services . . . by . . . use of a statement in writing: (i) that is materially false; (ii) respecting

[Defendant's] . . . financial condition; (iii) on which [DHS] . . . reasonably relied; and (iv) that [Defendant] caused to be made or published with intent to deceive." Because there were two grounds for finding an intentional program violation, the element of necessity was not met and collateral estoppel does not apply.

However, because there is no genuine issue of material fact, summary judgement is granted for the Plaintiff as to the following: 1) Defendant received money from DHS, 2) Defendant made a materially false statement in the November 29th and June 20th Review Forms, and 3) the Review Forms are written statements concerning the Defendant's financial condition.

Summary judgment is denied as to all other facts and legal issues.

A separate order will enter granting the motion for summary judgment in part and denying it in part.

# # #